UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YONG GUO,<br><br>                    Petitioner,<br><br>     v.<br><br>KIRSTJEN M NIELSEN, et al.,<br><br>                    Respondents. | CASE NO. C18-1557-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

Yong Guo, who is currently detained at the Northwest Detention Center in Tacoma, Washington, brings this 28 U.S.C. § 2241 immigration habeas action *pro se* to obtain release from detention or a bond hearing. The Government has moved to dismiss and Mr. Guo opposes dismissal. The Court recommends that both the Government's motion to dismiss and Mr. Guo's habeas petition be **GRANTED** in part and **DENIED** in part. Mr. Guo is not entitled to release but he should be provided with a new bond hearing.

**BACKGROUND**

Mr. Guo is a native and citizen of the People's Republic of China. Dkt. 9-2 at 2. He entered the United States in August 2011 with a B1 visa that authorized him to remain in the country until February 29, 2012. Dkt. 9-1 at 2. After his arrival, he applied for asylum but was denied. Dkt. 9-2 at 3.

REPORT AND RECOMMENDATION - 1

1    On August 21, 2012, the Immigration and Naturalization Service served Mr. Guo with a
2 Notice to Appear, charging him with removability from the United States for overstaying his
3 visa. Dkt. 9-1 at 2. On January 22, 2014, Mr. Guo admitted the factual allegations and conceded
4 the charge of removability in the Notice to Appear. Dkt. 9-6 at 4.

5    On May 8, 2015, while his removal proceedings were pending, Mr. Guo pleaded guilty to
6 smuggling goods from the United States, *see* 18 U.S.C. § 554, and using false information on
7 postal documents, *see* 18 U.S.C. § 1342. Dkt. 9-3. According to the written plea agreement, the
8 parties agreed to the following facts. *Id.* at 12. Between August 2012 and June 2014, Mr. Guo
9 purchased and acquired tens of thousands of dollars of firearms, firearms components, and
10 ammunition. *Id.* Mr. Guo used some of these items personally and sold other items to customers
11 in China and Hong Kong. *Id.* United States Postal Service records document more than 80
12 international shipments made by Mr. Guo to his customers in Asia. *Id.* Some of these shipments
13 included contraband firearms, firearms components, and/or ammunition. *Id.* To evade law
14 enforcement detection, Mr. Guo used false names and addresses on the packages, as well as false
15 information on the customs declarations. *Id.* at 12-13. Mr. Guo knew that what he was doing
16 was unlawful. *Id.* at 13. The Honorable Marsha J. Pechman sentenced him to 36 months
17 imprisonment. *Id.* at 3.

18    On June 29, 2015, the immigration judge ("IJ") administratively closed Mr. Guo's
19 removal proceedings. Dkt. 9-6 at 4.

20    On December 16, 2017, Mr. Guo completed his prison sentence and was transferred to
21 the custody of the Department of Homeland Security ("DHS"). *Id.*; *see also* Dkt. 9-4. His
22 removal proceedings were reopened. Dkt. 9-6 at 4. DHS subsequently amended his 2012 Notice
23 to Appear to include additional factual allegations and grounds of removability. *See* Dkt. 9-5;

Dkt. 9-4 at 3-5.

On March 20, 2018, an IJ held a bond hearing and denied release, finding that Mr. Guo presents a danger to the community. Dkt. 9-7. The only evidence submitted to the Court regarding this hearing is the IJ's one-page custody order, which provides no details regarding the hearing or the IJ's reasoning. *Id.* Mr. Guo did not appeal this decision to the Board of Immigration Appeals ("BIA").

On August 13, 2018, the IJ issued a written decision following a hearing on the merits of Mr. Guo's removal proceedings. Dkt. 9-6. The IJ found that Mr. Guo was removable; denied his requests for asylum, withholding of removal, and protection under the Convention Against Torture; and ordered him removed to the People's Republic of China. *Id.* Mr. Guo's appeal to the BIA is pending. *See* Dkt. 9-8.

On October 2, 2018, Mr. Guo filed a motion for a bond redetermination with the IJ. Dkt. 5-1 at 40-43. On October 15, 2018, the IJ denied Mr. Guo's motion because Mr. Guo failed to establish any changed circumstances since his last bond hearing that were material to his custody status, as required by 8 C.F.R. § 1003.19(e). Dkt. 9-9. Mr. Guo's appeal of this decision is pending before the BIA. Dkt. 9-10.

On October 29, 2018, Mr. Guo filed the instant habeas petition *pro se*. Dkt. 5 at 2. He alleges that the IJ for the March 2018 bond hearing had no "factual proof" to justify the dangerousness finding and failed to issue a written decision. *Id.* at 2. He also alleges that the IJ was biased. *Id.* at 10. He claims that his detention, which has exceeded six months and is unlikely to end soon, is unlawfully prolonged in violation of the Fifth and Eighth Amendments. *Id.* at 9-11. Mr. Guo claims that he should not be required to exhaust his administrative remedies. *Id.* at 5. He also raises a number of complaints related to his removal proceedings.

REPORT AND RECOMMENDATION - 3

1  *Id.* at 5-9.  Mr. Guo seeks release from detention and other appropriate relief.  *Id.* at 11.

2  After being served, the Government moved to dismiss, arguing that Mr. Guo's detention
3  is lawful and he is not entitled to an order of release, he has received all of the benefits of due
4  process to which he is entitled, he failed to exhaust his administrative remedies, and he fails to
5  state a claim for an Eighth Amendment violation.  Dkt. 8.  Mr. Guo filed a response, and the
6  Government filed a reply.  Dkts. 11, 12.

## DISCUSSION

### A. Jurisdiction

Mr. Guo challenges the lawfulness of his detention and also complains about his removal proceedings.  *See* Dkt. 5.  Federal district courts have habeas jurisdiction to review bond hearing determinations for constitutional claims and legal error.  *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011).  They do not, however, have jurisdiction over claims that directly or indirectly challenge an order of removal.  *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (exclusive jurisdiction over claims that directly or indirectly challenge a removal order is vested in the courts of appeals); 8 U.S.C. § 1252(a)(5) (petition for review to the appropriate court of appeals is the "sole and exclusive means for judicial review" of a final order of removal). Accordingly, the Court has jurisdiction to consider Mr. Guo's challenges to his detention but not his removal proceedings.

### B. Exhaustion

Mr. Guo has not exhausted his administrative remedies.  He did not appeal the IJ's March 2018 custody order, and his appeal of the IJ's October 2018 custody order is pending before the BIA.  *See Leonardo v. Crawford*, 646 F.3d 1157, 1159-61 (9th Cir. 2011) (proper procedure to challenge an IJ's bond determination is to appeal to the BIA, wait for the BIA to render its

1  decision, and then file a habeas petition in the district court). In the § 2241 habeas context,

2  exhaustion is prudential, rather than jurisdictional. *Singh*, 638 F.3d at 1203 n.3. Therefore, it

3  may be waived. *See Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

4  When deciding whether to require prudential exhaustion, courts consider whether "(1)

5  agency expertise makes agency consideration necessary to generate a proper record and reach a

6  proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the

7  administrative scheme; and (3) administrative review is likely to allow the agency to correct its

8  own mistakes and to preclude the need for judicial review." *Id.* (quoting *Noriega-Lopez v.*

9  *Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Even if these factors weigh in favor of prudential

10 exhaustion, waiver of exhaustion may be appropriate "where administrative remedies are

11 inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture,

12 irreparable injury will result, or the administrative proceedings would be void." *Laing v.*

13 *Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d

14 685, 688 (9th Cir. 1981)).

15 The Court should waive prudential exhaustion. The Government has not provided the

16 Court with a contemporaneous recording of Mr. Guo's March 2018 bond hearing. Therefore, as

17 explained below, there is no basis for the Court to conclude that the bond hearing complied with

18 due process. Requiring Mr. Guo to exhaust his administrative remedies in this situation would

19 be futile.

20 **C.     Framework for immigration detention**

21 Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of

22 noncitizens, such as Mr. Guo, who are in removal proceedings. 8 U.S.C. § 1226; *see also*

23 *Demore v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a

REPORT AND RECOMMENDATION - 5

constitutionally permissible part of that process."). Section 1226(a) grants DHS the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.[1]  8 U.S.C. § 1226.

When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an IJ. 8 C.F.R. § 236.1(d)(1). At the bond redetermination hearing, the burden is on the detainee to show to the satisfaction of the IJ that he warrants release on bond. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). In making a bond decision under § 1226(a), an IJ must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id.* (citing *In re Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)). An IJ also may consider any number of discretionary factors, including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations;

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 6

(8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *Id.*

Once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e).

Until recently, Ninth Circuit jurisprudence required noncitizens detained under § 1226(a) to be provided automatic bond hearings every six months at which the government was required to justify continued detention by clear and convincing evidence. *Rodriguez v. Robbins*, 804 F.3d 1060, 1084-85, 1087 (9th Cir. 2015) ("*Rodriguez III*"), *rev'd sub nom Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). In *Jennings*, the Supreme Court reversed, explaining that the Ninth Circuit had misapplied the canon of constitutional avoidance and that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of" periodic bond hearings where the government bears the burden. 138 S. Ct. at 847. The Supreme Court did not decide whether the Constitution requires such periodic hearings, and remanded to the Ninth Circuit for consideration of that question. The Ninth Circuit has remanded to the district court to determine the minimum requirements of due process, including reassessing and reconsidering both the clear and convincing evidence standard and the six-month bond hearing requirement. *Rodriguez v. Marin*, 909 F.3d 252, 255-56 (9th Cir. 2018) ("*Rodriguez IV*").

**D.     Mr. Guo is not entitled to release**

There is no dispute that Mr. Guo is detained under § 1226(a). Because his detention is statutorily authorized, he is not entitled to release. *See Demore*, 538 U.S. at 530 ("Detention during removal proceedings is a constitutionally permissible part of that process."); *Prieto-*

REPORT AND RECOMMENDATION - 7

*Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) ("Section 1226(a) on its face authorizes the detention of [noncitizens] during the removal order review process.").

Mr. Guo nevertheless argues that he must be released because he has been detained for more than six months, citing *Zadvydas v. Davis*, 533 U.S. 678 (2001). Dkt. 5 at 9-11. *Zadvydas*, however, involved noncitizens who are subject to final orders of removal and therefore detained under 8 U.S.C. § 1231. Because Mr. Guo is detained under § 1226(a), not § 1231, *Zadvydas* is inapplicable.

**E.     Mr. Guo is entitled to a new bond hearing**

Mr. Guo argues that his continued detention violates due process and that the IJ failed to cite "factual proof" to justify the dangerousness finding. Dkt. 5 at 2. He also notes that the IJ did not issue a written decision. *Id.* The Government counters that Mr. Guo has received two bond determinations and that absent procedural deficiencies, he is not entitled to repeated bond hearings. Dkt. 8 at 7.

In this case, however, there is a procedural deficiency: the Government has not provided a contemporaneous recording of the bond hearing, and therefore the Court is unable to confirm that the hearing complied with due process. In *Singh*, the Ninth Circuit held that due process requires the government to provide contemporaneous records for prolonged detention bond hearings. 638 F.3d at 1208. In reaching this conclusion, the court applied the factors articulated in *Matthews v. Eldridge*, 424 U.S. 319 (1976):

> [T]he specific dictates of due process generally require[ ] consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Singh*, 638 F.3d at 1208 (quoting *Eldridge*, 434 U.S. at 335) (alterations in *Singh*). The court determined that the private interest at stake—freedom from prolonged detention—was substantial and that the government's refusal to provide contemporaneous records fundamentally affected that interest. *Id.* The court also determined recording the hearings would provide a minimal additional burden on the government. *Id.*

Although *Singh* involved a noncitizen who had been detained for a prolonged period of time, the Court finds that the contemporaneous record requirement applies to the initial bond redetermination hearing Mr. Guo received. Freedom from detention—whether of a short or prolonged duration—is an important interest that "lies at the heart of the liberty that [the Due Process] Clause protects." *Rodriguez III*, 804 F.3d at 1066. Under the current legal framework, Mr. Guo is entitled to only one bond hearing, after which he will be afforded another hearing only if he can demonstrate a change in circumstances that is materially relevant to his custody status. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19(e). Given that his detention will not be automatically reviewed on a periodic basis, it is even more important that his initial hearing comport with the legal standards. As the Ninth Circuit found in *Singh*, the absence of a contemporaneous record may make it impossible for reviewing courts to determine whether the IJ committed legal or constitutional error. *See Singh*, 638 F.3d at 1208. Likewise, as in *Singh*, the burden on the government of providing a contemporaneous record is minimal, particularly given that the government regularly records other bond hearings. Weighing the *Eldridge* factors, the Court concludes that due process requires a contemporaneous recording of Mr. Guo's bond hearing.

Because Mr. Guo's detention does not comport with due process, he is entitled to a new bond hearing. At this hearing, the government should be required to comply with the procedural

requirements outlined in *Singh*, including providing a contemporaneous recording and, because Mr. Guo's detention is now prolonged, placing the burden on the government to justify continued detention by clear and convincing evidence.[2]  If Mr. Guo is not satisfied with the outcome of this hearing, he should appeal to the BIA and obtain the BIA's ruling before seeking habeas relief.

**F.     Mr. Guo's detention does not violate the Eighth Amendment**

The Government argues that Mr. Guo fails to state a claim for an Eighth Amendment

---

[2] The Court finds that the clear and convincing evidence standard survives *Jennings* for the reasons articulated in *Cortez v. Sessions*, 318 F. Supp. 3d 1134 (N.D. Cal. 2018):

> In *Singh*, the Ninth Circuit held that "the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing." 638 F.3d at 1203. *Singh* observed that the "Supreme Court has repeatedly reaffirmed the principle that 'due process places a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake . . . are both particularly important and more substantial than mere loss of money.'" *Id.* at 1204 (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 363, 116 S. Ct. 1373, 134 L.Ed.2d 498 (1996)).  *See also Ramos II*, 293 F. Supp. 3d at 1028 (holding that clear and convincing evidence standard applies to bond hearings for noncitizens detained pursuant to section 1231(a)(6)).
>
> *Jennings* held that the Ninth Circuit erred in construing section 1226(a), stating that "[n]othing in § 1226(a)'s text . . . supports the imposition" of the procedural protections ordered by the Ninth Circuit—"namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the [noncitizen's] continued detention is necessary." 138 S. Ct. at 847.  The Court did not engage in any discussion of the specific evidentiary standard applicable to bond hearings, and there is no indication that the Court was reversing the Ninth Circuit as to that particular issue.  Accordingly, the court declines to find that *Jennings* reversed the clear and convincing evidence standard announced in *Singh* or later Ninth Circuit cases relying on *Singh*'s reasoning.

*Cortez*, 318 F. Supp. 3d at 1146-47; *see also Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 224 n.12 (3d Cir. 2018) (adopting *Singh*'s clear and convincing evidence standard post-*Jennings*); *Darko v. Sessions*, 342 F. Supp. 3d 429, 434-36 (S.D.N.Y. Oct. 19, 2018) (same); *Hernandez v. Decker*, No. 18-cv-5026, 2018 WL 3579108, at *10-*11 (S.D.N.Y Jul. 25, 2018) (same).

REPORT AND RECOMMENDATION - 10

violation because the Eighth Amendment does not apply to immigration detention. Dkt. 8 at 10-11.  The Court agrees.  "[D]eportation proceedings are civil, rather than criminal, in nature." *Agyeman v. INS*, 296 F.3d 871, 886 (9th Cir. 2002) (citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984)).  Mr. Guo is thus not entitled to habeas relief on the ground that his immigration detention violates the Eighth Amendment's prohibition against cruel and unusual punishment.  *See Slim v. Nielson*, No. 18-cv-02816, 2018 WL 4110551, at *7 (N.D. Cal. Aug. 29, 2018); *Calmo v. Sessions*, No. 17-cv-7124, 2018 WL 2938628, at *5 (N.D. Cal. June 12, 2018).

To the extent Mr. Guo seeks to recover from the allegedly unconstitutional nature—as opposed to duration—of his confinement, his claims do not belong in this immigration habeas action.  *See Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) ("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement.  A civil rights action, in contrast, is the proper method of challenging 'conditions of . . . confinement.'") (cited sources omitted).  And to the extent he contends that the length of his immigration detention amounts to punishment in violation of the Eighth Amendment, he fails to cite any caselaw that supports this position.  Mr. Guo's Eighth Amendment claim should be denied.

## CONCLUSION AND RIGHT TO OBJECT

Both Mr. Guo's habeas petition, Dkt. 5, and the Government's motion to dismiss, Dkt. 8, should be **GRANTED** in part and **DENIED** in part.  Mr. Guo is not entitled to release, but **within 14 days** of the order on this Report and Recommendation, he should be provided a bond hearing that comports with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).

1    This Report and Recommendation is not an appealable order. Therefore a notice of
2 appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the
3 assigned District Judge enters a judgment in the case.

4    Objections, however, may be filed and served upon all parties no later than **March 8,**
5 **2019.** The Clerk should note the matter for **March 8, 2019**, as ready for the District Judge's
6 consideration if no objection is filed. If objections are filed, any response is due within 14 days
7 after being served with the objections. A party filing an objection must note the matter for the
8 Court's consideration 14 days from the date the objection is filed and served. The matter will
9 then be ready for the Court's consideration on the date the response is due. Objections and
10 responses shall not exceed 10 pages. The failure to timely object may affect the right to appeal.

11    DATED this 14th day of February, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 12